**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| REMENTA FORBES | : CIVIL ACTION NO. |
| Plaintiff, | : |
| v. | : **JURY TRIAL DEMANDED** |
| BJ'S WHOLSALE CLUB, INC. | : |
| Defendant. | : OCTOBER 26, 2020 |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634; the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. 46a-60, *et seq.*; and Connecticut state law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. §1988.

6. The Plaintiff received a Notice of Right to Sue on July 28, 2020.

7. The Plaintiff received a Release of Jurisdiction on July 27, 2020.

-1-

### PLAINTIFF

8. The Plaintiff, Rementa Forbes ("Plaintiff" or "Forbes"), resides at 85 Walnut Street, East Hartford, CT 06108.

### DEFENDANT

9. The Defendant, BJ's Wholesale Club Inc. ("BJ's" or "Defendant") is a corporation organized under the laws of the state of Connecticut, is registered with the state of Connecticut, and conducts substantial business at 507 New Park Avenue, West Hartford, Connecticut, where Plaintiff was employed.

10. The Defendant employs more than twenty (20) employees.

### FACTUAL ALLEGATIONS

11. Plaintiff African-American.

12. Plaintiff was born on November 19th, 1968.

13. Plaintiff is 50 years old.

14. Plaintiff was the oldest African-American employees out of his Ticketer's work team.

15. Plaintiff was a dedicated employee for over sixteen years at BJ's.

16. Throughout his employment Plaintiff continually showed loyalty, hard work, honesty, and various other attributes that made him a valuable tenured employee.

17. Plaintiff provided maximum productivity to BJ's during the most fruitful years of his life.

18. Plaintiff was hired in 2003 by BJ's for the third shift Ticketer position.

19. Plaintiff diligently worked the 11:00 PM to 6:30 AM, rigorous overnight shift in which not many employees remain employed for as long as a time as he did.

20. At all times relevant, Plaintiff's General Manager was Paul Kondash ("Kondash") (Caucasian), and Michael (Zone 1 Specialist) (Caucasian), was Plaintiff's Zone Manager.

21. Plaintiff always performed the duties of his position in a satisfactory manner and despite the arduous hours that his shifts required he was a reliable team member and always gave his best to perform the duties of his position. Plaintiff had no poor performance reviews and no disciplinary reprimands.

22. Unfortunately, to Plaintiff's severe detriment, BJ's management targeted and treated him disparately throughout his employment, ultimately culminating in his wrongful termination.

23. The disparate treatment towards Plaintiff began as early as 2018, at the hands of Manuel D'Ole ("D'Ole") and was rapidly followed by Kondash, who aided and abetted D'Ole's discriminatory conduct, ultimately terminating Plaintiff, under the feeble guise of "position elimination" due to a "restructure."

24. In point of fact, in or about March 2018, Plaintiff, recognizing that he was not being treated fairly, pointedly asked D'Ole, "**are you a racist**?"

25. James Higgins, ("Higgins") (Caucasian,), Assistant General Manager, was informed about D'Ole's misconduct.

26. Nonetheless, D'Ole's disparate treatment was neither addressed by BJ's management nor Higgins, the assistant general manager.

27. In fact, instead of remedying the situation, in retaliation, BJ's sealed Plaintiff's fate as a BJ's employee.

28. Adding support to his position that he was the target of discrimination because of his race, other African-American employees can attest to the fact they were targeted and forced to resign from the company due to the disparate treatment they had been receiving.

29. BJ's latest salvo occurred on May 8, 2019, either in direct retaliation because Plaintiff raised a genuine concern of racism in the workplace and/or in furtherance of its disparate treatment toward him — either way, Plaintiff was wrongfully terminated under the pretext of a "restructure."

30. The purported "restructuring" in Plaintiff's department, was originally only presented as a business decision, whereas BJ's promised it would retain all its existing employees and restructure its current environment in order to obtain more productivity.

31. It was never presented as a formal restructure, wherein employees' positions would be eliminated.

32. As explicitly promised in one of the meetings — some positions could be eliminated but everyone in the area would remain employed at BJ's, which clearly assured Plaintiff, that at worst, he would be transferred to another department within BJ's.

33. Following this "promise" on May 8, 2019 at 5:00 AM, while still performing Plaintiff's work duties, Kondash called Plaintiff into his office and shockingly informed him of his immediate termination, without notice, after sixteen years of dedicated employment.

34. Plaintiff, at this point remembered the prior commitment made by BJ's to retain all its employees and questioned why he, the only African-American Ticketer, was being terminated.

35. Plaintiff, also mindful of that promise by BJ's to transfer its employees into another department, asked Kondash if he could transfer (as previously agreed) to another position within BJ's or even another location.

36. Kondash, immediately, in stark contrast to prior relied upon promises, categorically denied Plaintiff that well-deserved opportunity to transfer.

37. The denial of Plaintiff's transfer is further proof of discriminatory treatment since it is common and accepted practice that whenever another position is available in any other department the night shift crew are the first employees afforded the opportunity to transfer.

38. Had Plaintiff been told in advance that he would have been terminated, he would have had time to find employment elsewhere so that he would not have jeopardized the welfare of his family nor would he have put his health at risk given the fact that once he lost his employment at BJ's he also could no longer afford health insurance that was medically necessary for the treatment for his cancer.

39. This disgraceful move by BJ's halted Plaintiff's sixteen-year career and left him without a job for the foreseeable future, with a serious illness to face without health insurance, and a family he can no longer provide for.

40. Plaintiff, a loyal tenured employee to the core, deserved better and was absolutely willing to transfer to whichever department his supervisor would transfer him to and had the skill set to perform other positions within the store.

41. Plaintiff was also willing to transfer to any other store location, among many that the company has, yet, he was terminated, prior to being given that opportunity.

42. Plaintiff was then required to take a perp walk and was immediately escorted off of the premises, causing him unwarranted severe emotional distress and mental anguish.

43. Further belying BJ's proffered reason for terminating Plaintiff's employment — "job elimination" — BJ's subsequently posted Plaintiff's exact former position on "Indeed," a well-known job recruiter website.

44. As evidence of disparate treatment, another non-African-American Ticketer's position was not eliminated in BJ's "restructure."

45. Also calling into question the veracity of BJ's termination of Plaintiff's employment is the fact, Kondash directly admitted to Michael (Zone 1 Specialist), that he terminated Plaintiff "illegally" which Michael could attest to.

## COUNT ONE

### VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

46. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-45 with the same force and impact as is fully set forth herein.

47. The Plaintiff was 50 years old at the time of the events and interactions alleged in this Complaint.

48. Plaintiff was the oldest African-American employees out of his Ticketer's work team.

49. The Plaintiff was at all times qualified for the position he held.

50. The Plaintiff was treated disparately because of his age and was wrongfully terminated on May 8, 2019, constituting an adverse employment action.

51. Defendant's actions and conduct are a violation of the ADEA.

52. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance,

emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

53. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(1)
### (AGE DISCRIMINATION)

54. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-53 with the same force and impact as is fully set forth herein.

55. The Plaintiff was treated disparately because of his age and was wrongfully terminated on May 8, 2019, constituting an adverse employment action.

56. Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(1).

57. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

58. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT THREE

### VIOLATION OF TITLE VII
### (RACE AND COLOR DISCRIMINATION)

59. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-45 with the same force and impact as if fully set forth herein.

60. Plaintiff is African-American.

61. The Plaintiff was qualified for his position. Defendant outwardly treated Plaintiff disparately because of the characteristics associated with his African-American race and color.

62. Plaintiff's Supervisors, at the time of these events Paul Kondash ("Kondash"), Plaintiff's General Manager and Michael (Zone 1 Specialist) Plaintiff's Zone Manager were Caucasian.

63. Throughout his employment at BJ's, Plaintiff was subjected to disparate treatment at hands of his supervisors as it can be appreciated when in 2018, after different episodes of unfair treatment towards him, Plaintiff, incapable of enduring more hostility at the hands of Manuel D'Ole ("D'Ole") due to his race and skin color asked him "**are you a racist**?"

64. Further proof of the discriminatory treatment that Plaintiff was enduring is the fact D'Ole's disparate treatment was neither addressed by BJ's nor Higgins who was also aware of this wrong conduct.

65. To Plaintiff's severe detriment, D'Ole's conduct was followed by Kondash, who aided and abetted D'Ole's discriminatory conduct to the point to terminate Plaintiff's employment.

66. Defendant's actions and conduct are a violation of Title VII.

67. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

68. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FOUR

### VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(1)
### (RACE AND COLOR DISCRIMINATION)

69. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-68 with the same force and impact as if fully set forth herein.

70. Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(1).

71. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

72. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FIVE

### RETALIATION,
### IN VIOLATION OF TITLE VII

73. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-45 with the same force and impact as is fully set forth herein.

74. Plaintiff, recognizing that he was not being treated fairly, pointedly asked D'Ole, "are you a racist?" James Higgins, (Caucasian,), Assistant General Manager, was informed about D'Ole's misconduct.

75. Nonetheless, D'Ole's disparate treatment was neither addressed by BJ's management nor Higgins, the assistant general manager.

76. In fact, instead of remedying the situation, in retaliation, BJ's sealed Plaintiff's fate as a BJ's employee.

77. Defendants' conduct is unlawful and in violation of the ADEA.

78. As a result of the Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

79. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT SIX

### RETALIATION, IN VIOLATION OF THE CONN. GEN. STAT 46A60(B)(4)

80. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-45 with the same force and impact as is fully set forth herein.

81. Plaintiff, recognizing that he was not being treated fairly, pointedly asked D'Ole, "are you a racist?" James Higgins, (Caucasian,), Assistant General Manager, was informed about D'Ole's misconduct.

82. Nonetheless, D'Ole's disparate treatment was neither addressed by BJ's management nor Higgins, the assistant general manager.

83. In fact, instead of remedying the situation, in retaliation, BJ's sealed Plaintiff's fate as a BJ's employee.

84. Defendant's conduct is unlawful and in violation of the C.G.S. 46a60(b)(4).

85. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits,

health insurance, retirement and pension benefits, mental and emotional distress, and the ability to enjoy life's pleasures.

86. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

### PRAYER FOR RELIEF

Wherefore the Plaintiff prays that this court award:

1. Money damages;
2. Costs;
3. Punitive damages, attorney fees, and expert witness fees;
4. Pre-judgment interest
5. Trial by jury; and
6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
REMENTA FORBES

By: _____/s/_____
Michael C. McMinn (*ct27169*)
**THE MCMINN EMPLOYMENT LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604
Tel: (203) 683-6007
Fax: (203) 680-9881
Email: michael@mcminnemploymentlaw.com

*COUNSEL FOR PLAINTIFF*